UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

| | |
|---|---|
| CHERRELL R. RAYMOND, MICHELLE MASON, NATHALIE COLOMBO, CATRICE GRIGSBY individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES, INC.,<br><br>Defendant | Civil Action No. **1:22-cv-1014**<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

_____

**CLASS ACTION COMPLAINT**

_____

Plaintiffs, Cherrell R. Raymond ("Plaintiff Raymond"), Michelle Mason, ("Plaintiff Mason"), Nathalie Colombo ("Plaintiff Colombo"), Catrice Grigsby ("Plaintiff Grigsby"), individually and on behalf of the class and subclasses of all others similarly situated as defined below, by and through undersigned counsel, brings this Class Action Complaint against ABBOTT LABORATORIES, INC. and alleges as follows:

**NATURE OF THE ACTION**

1. On February 17, 2022, the United States Food and Drug Administration ("FDA") announced that it was investigating consumer complaints of Cronobacter sakazakii and Salmonella Newport infections resulting from the consumption of powdered infant formula produced at Abbott Nutrition's Sturgis, Michigan facility. The FDA alerted consumers of the investigation in conjunction with the Center for Disease Control.

1

2. The FDA warned consumers not to use Similac, Alimentum, or EleCare powdered infant formulas produced by Abbott Laboratories at their Sturgis facility. The affected formulas can be identified by (i) the first two digits of the code are 22 through 37; and (ii) the code on the container contains K8, SH or Z2; and (iii) the expiration date is 4-1-2022 (APR 2022) or later. These products produced at the Sturgis facility can be found across the U.S. and were likely exported to other countries.

3. "As this is a product used as the sole source of nutrition for many of our nation's newborns and infants, the FDA is deeply concerned about these reports of bacterial infections," said Frank Yiannas, FDA Deputy Commissioner for Food Policy and Response.

4. On the same day the FDA announced this investigation, Abbott Laboratories issued a voluntary recall of these certain Abbott brand powdered infant formula products from the marketplace due to possible Cronobacter sakazakii and Salmonella contamination. Abbott Laboratories announced that during testing in their Sturgis Facility, they found evidence of Cronobacter sakazakii in the plant in non-product contact areas. Abbott Laboratories directed consumers to throw out the affected products.

5. Infant Formula from Abbott Labs costs between $1-$1.75 per ounce depending on the formulation and place of purchase. Plaintiffs bring this action as purchasers of the recalled infant formula both on their own behalf, as well as on behalf of all others similarly situated in order to be compensated for the economic loss suffered as a result of Abbott Laboratories' negligence and deceptive practices.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332. Complete diversity exists between the Plaintiffs and the Defendant. Damages in this action also exceed $75,000.

7. This Court has personal jurisdiction over Defendant because it does business in the Northern District of Illinois and has sufficient minimum contacts with this District. Defendant intentionally avails itself of the markets in this State through the promotion, marketing, and sale of Similac Infant Formula, including but not limited to Similac®, Alimentum® and EleCare® products, to render the exercise of jurisdiction by this Court permissible under Illinois law and the U.S. Constitution.

8. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## PARTIES

9. Plaintiff Cherrell R. Raymond is a citizen of the State of Louisiana and resident of Layfette Parish, Louisiana, purchased Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare in the class period.

10. Plaintiff Michelle Mason is a citizen of the State of California and resident ofNew Castle County, Delaware purchased Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare in the class period.

11. Plaintiff Nathalie Colombo is a citizen of the State of Pennsylvania and resident of Philadelphia County, Pennsylvania received Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare in the class period.

12. Plaintiff Catrice Grigsby is a citizen of the State of Indiana and a resident of Lake County, Indiana purchased Similac Infant Formula, including but not limited to Similac, Alimentum and EleCare in the class period.

13. At all times relevant, Plaintiffs Cherrell R. Raymond, Michelle Mason, Nathalie Colombo, Catrice Grigsby were unaware that these products contained or could contain contaminants, including, but not limited to certain bacteria such as Salmonella and Cronobacter sakazakii. Had they known that these products contained or could contain said contaminants, they would not have purchased them. Plaintiffs Cherrell R. Raymond, Michelle Mason, Nathalie Colombo, Catrice Grigsby incurred losses and damages as a result of the activities alleged herein.

14. Defendant, ABBOTT LABORATORIES, INC. ("Abbott Labs" or "Defendant") is a Illinois corporation with a principal place of business in Abbott Park, Lake County, Illinois, and registered in Illinois as a foreign corporation. Abbott has been and still is engaged in the business of manufacturing, promoting and selling Similac Infant Formula, including but not limited to Similac®, Alimentum® and EleCare® products. These products are sold throughout STATE and the United States.

**FACTUAL ALLEGATIONS**

15. Abbott Laboratories Inc., manufactures, labels, markets, and sells infant formula under the Similac, Alimentum and EleCare brands.

16. On February 17, 2022, the U.S. Food and Drug Administration ("FDA") announced it was investigating consumer complaints of Salmonella and Cronobacter sakazakii infections related

to the consumption of Similac, Alimentum and EleCare powdered infant formulas manufactured at Abbott Labs' Sturgis, Michigan facility.

17. Cronobacter bacteria can cause severe, life-threatening infections (sepsis) or meningitis (an inflammation of the membranes that protect the brain and spine). Symptoms of sepsis and meningitis may include poor feeding, irritability, temperature changes, jaundice (yellow skin and whites of the eyes), grunting breaths and abnormal movements. Cronobacter infection may also cause bowel damage and may spread through the blood to other parts of the body.

18. Salmonella is a group of bacteria that can cause gastrointestinal illness and fever called salmonellosis. Most people with salmonellosis develop diarrhea, fever and abdominal cramps. More severe cases of salmonellosis may include a high fever, aches, headaches, lethargy, a rash, blood in the urine or stool, and in some cases, may become fatal.

19. The FDA advised consumers that it was "investigating complaints of four infant illnesses from three states. All four cases related to these complaints were hospitalized and Cronobacter may have contributed to a death in one case. The FDA has initiated an onsite inspection at the facility. Findings to date include several positive Cronobacter sakazakii results from environmental samples taken by the FDA and adverse inspectional observations by the FDA investigators. A review of the firm's internal records also indicates environmental contamination with Cronobacter sakazakii and the firm's destruction of product due to the presence of Cronobacter."

20. The FDA advised consumers should "not use Similac, Alimentum, or EleCare powdered infant formulas if (a) the first two digits of the code are 22 through 37; and (b) the code on the container contains K8, SH or Z2; and (c) the expiration date is 4-1-2022 (APR 2022) or later." These codes indicate whether formula was produced in the contaminated Sturgis Facility.

21. The same day the FDA announced its investigation and warned consumers about potentially contaminated formulas, Abbott Labs announced a voluntary recall of the formulas produced at the Sturgis facility and identified that testing of the Sturgis facility revealed evidence of Cronobacter sakazakii in the plant.

22. On or about February 20, 2022, Plaintiff, Cherrell R. Raymond, purchased Similac Neosure Advanced for their infant.

23. On or about January 6, 2022, and February 18, 2022, Plaintiff Michelle Mason, purchased Similac Alimentum for their infant.

24. On or about February 13, 2022, Plaintiff Nathalie Colombo, received Similac Sensitive for their infant.

25. On or about January 24, 2022, Plaintiff Catrice Grigsby received Similac Neosure Advanced for their infant.

26. The infant formula purchased by Plaintiffs had lot numbers matching the tainted lots identified by the FDA news advisory.

27. Following the advice of the FDA as well as Abbott Labs, Plaintiffs Cherrell R. Raymond, Michelle Mason, Nathalie Colombo, Catrice Grigsby disposed of the recalled formula due to fear of potential contamination.

Class Allegations

28. Plaintiffs Cherrell R. Raymond, Michelle Mason, Nathalie Colombo, Catrice Grigsby bring this action as a Class Action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased and then disposed of formula manufactured at Abbott Labs' Sturgis facility.

29. The proposed class is as follows:

All persons who purchased, in the United States, and disposed of Similac®, Alimentum® and EleCare® powdered infant formulas produced from Abbott Labs' Sturgis, Michigan facility, and which containers display the following: (a) the first two digits of the code are 22 through 37; and (b) the code on the container contains K8, SH or Z2; and (c) the expiration date is 4-1-2022 (APR 2022) or later.



30. This action has been brought and may properly be maintained as a class action against the Defendant pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed classes are ascertainable.

31. *Numerosity* - The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at the present time, plaintiff is informed and believes that it is in excess of 1000 persons. Treatment of claims in a class action rather than in individual actions will benefit the parties and the court.

32. *Typicality* - Plaintiff's claims are typical of the claims of the Class because plaintiff and all the Class members sustained damages which arose out of defendant's wrongful conduct complained of herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and class members, and there are no defenses that are unique to Plaintiffs' claims.

Plaintiffs' and class members' claims are from the same set of operative facts and are based on the same legal theories.

33. *Adequacy* – Plaintiff is a representative party who will fully and adequately protect the interests of the Class members. Plaintiff has retained counsel who are experienced and competent in both class action and consumer litigation, including products liability litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the class and have the financial resourced to do so. Plaintiffs have no interests which are contrary to or in conflict with those of the Class they seek to represent.

34. *Superiority* - A class action would be superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

    a. Without resolution on a class-wide basis, class members as a practical matter will be unable to obtain compensation for the disposed formula as the economic losses are not great enough to justify individual actions resulting in Defendant retaining ill-gotten gains.

    b. It would be a substantial hardship for most individual class members if they were forced to prosecute individual actions;

    c. A class action will permit an orderly and expeditious administration of the claims, foster economies of time, effort and expense, and ensure uniformity of decisions;

    d. Defendant has acted on grounds generally applicable to class members, making class-wide relief appropriate.

35. *Predominance* – The common issues that comprise the basis for this lawsuit predominate over any individual issues. Adjudication of these common issues in a single action has important

and desirable advantages of judicial economy. The prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudication could establish incompatible standards of conduct for defendant under the laws alleged herein.

36. *Commonality* – Further, questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members in that defendant has acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

    a. Whether Defendant negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and/or sale of certain infant powdered formula products manufactured by Abbott Labs at their Sturgis facility as identified above;

    b. Whether Defendants intentionally or negligently made misrepresentations in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of certain infant powdered formula products manufactured by Abbott Labs at their Sturgis facility as identified above;

    c. Whether Defendants failed to use reasonable care in testing infant powdered formula products and the Sturgis, Michigan facility so as to ensure that they were safe for use and were not contaminated with *Cronobacter sakazakii*, *Salmonella,* and/or other bacteria.

    d. Whether Defendants breached express warranties in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of

    certain infant powdered formula products manufactured by Abbott Labs at their Sturgis facility as identified above;

e. Whether Defendants failed to accompany Whether Defendants Failed to accompany said Similac products with adequate warnings regarding the possible adverse health effects associated with its use including possible adverse health effects from *Cronobacter sakazakii* or *Salmonella* contamination;

f. Whether Defendant failed to adequately warn the Plaintiffs and the Class of the health danger and/or hazard with respect to the tainted infant formula after discovering contamination in the Sturgis facility;

g. Whether Defendants breached implied warranties in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of the recalled powdered infant formula products manufactured at Abbott Labs' Sturgis facility;

h. Whether Defendants were unjustly enriched by unfair practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of the recalled powdered infant formula products manufactured at Abbott Labs' Sturgis facility to the detriment of, Plaintiffs and other Class members;

i. Whether Defendants' conduct as set forth above injured consumers and if so, the extent of the injuries.

## CAUSES OF ACTION

### First Cause of Action
**NEGLIGENCE**

37. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and further declare:

38. Upon information and belief, Defendant formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold to consumers powdered infant formula products manufactured at Abbott Labs' Sturgis facility which were contaminated with *Cronobacter sakazakii*, *Salmonella,* and/or other bacteria which can cause bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

39. Defendant has a duty to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of powdered infant formula products, including a duty to ensure that they are safe for their intended use.

40. Defendant has a duty warn consumers if powdered infant formula products or the facilities they are manufactured in are contaminated with *Cronobacter sakazakii*, *Salmonella,* or other bacteria.

41. As set forth in detail above, Defendants failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of powdered infant formula products from Abbott Labs' Sturgis facility. Defendant failed to ensure that its powdered infant formula products were safe for consumption and failed to timely warn consumers of contamination in the products and in the Sturgis facility where the products were manufactured.

42. Defendant failed to ensure that its products were safer for their intended use.

43. Defendant failed to conduct sufficient testing of its Sturgis, Michigan facility and of the powdered infant formula products produced at said facility.

44. Defendant failed to timely warn consumers regarding the discovery of *Cronobacter sakazakii* at its Sturgis facility and within product that was destroyed.

45. Defendant breached these duties owed to Plaintiffs and the Class. This breach is the actual and proximate cause of Plaintiffs' injuries as well as the injuries of all other Class members.

46. Upon information and belief, Defendant knew or should have known of the *Cronobacter sakazakii* contamination at its Sturgis facility and the potential contamination of powdered infant formula products manufactured therein. Despite this, Abbott Labs continued to market and sell potentially contaminated powdered infant formula products to consumers, including Plaintiffs and members of the Class, despite the reasonable possibility that said products were not safe for their intended use and could cause severe bacterial infections, fevers, bowel related illnesses, diarrhea, rashes and other gastrointestinal related illnesses.

47. Defendants knew or should have known that Plaintiffs and members of the Class would foreseeably have to dispose of the potentially tainted formula or risk endangering their infants with severe adverse health effects owed to bacterial infection associated with ingestion of powdered infant formula products manufactured at the Sturgis facility.

48. Defendant's negligence proximately caused Plaintiffs and the Class to be injured by forcing them to dispose of previously purchased formula. But for Abbot Labs' negligence, Plaintiffs would not have suffered these economic damages. Plaintiffs would not have purchased powdered infant formula products manufactured at Abbott Labs Sturgis facility if they had known that the facility was contaminated with *Cronobacter sakazakii* which can cause a potentially lethal infection in infants.

## Second Cause of Action
### STRICT LIABILITY – PRODUCTS LIABILITY

49. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein, and further declare:

50. Defendants formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold powdered infant formula products, including but not limited to Similac, Alimentum and EleCare products.

51. At all relevant times, Defendant knew or should have known that the powdered infant formula products manufactured at Abbott Labs' Sturgis facility contained foreign bacteria in their ingredients. Defendant knew or should have known of the dangers of infant formula contaminated with *Cronobacter sakazakii* which includes the possibility of death.

52. Defendant formulated, designed, manufactured, marketed, labeled, distributed, and/or sold powdered infant formula products from its Sturgis facility that were defective in formulation, design, and/or manufacturing. These powdered infant formula products were defective when they left control of Defendant. The foreseeable risks of bacterial infections posed by contaminated infant formula products exceeded any benefits associated with the formulation, design and manufacturing of these products. The powdered infant formula products manufactured at Abbott Labs' Sturgis facility and formulated, designed, marketed, labeled, distributed, and/or sold by Defendant were unreasonably dangerous and unfit for their intended use.

53. Defendant knew that Plaintiffs and other members of the Class could not use the powdered infant formula products manufactured at its Sturgis facility as intended without exposing infant children to *Cronobacter sakazakii*, *Salmonella,* and/or other potentially lethal bacterial infection. Defendants failed to warn Plaintiffs and other members of the Class as to the

potential adverse health effects that using contaminated infant formula products could cause until after the announcement of an FDA investigation into consumer complaints of *Cronobacter sakazakii* infections.

54. These potentially contaminated infant formula products were expected to and did reach Plaintiffs and other members of the Class without substantial change in condition.

55. Upon information and belief, thousands of containers of potentially contaminated powdered infant formula products were sold from the time Defendant learned of the potential contamination at its Sturgis facility until the FDA announced its investigation on February 17, 2022.

56. These containers of potentially contaminated powdered infant formula = formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold by Defendant were defective due to inadequate formulation, design, manufacture, safety testing and inadequate warning of the products' true nature.

57. If Plaintiffs and members of the Class were warned about the contaminated infant formula products and the risk to infants of *Cronobacter sakazakii*, *Salmonella*, and/or other bacterial infections associated with the use of these products, Plaintiffs would not have purchased, acquired or used Defendant's products.

58. Plaintiffs and class members were harmed directly and proximately by Defendants' failure to warn about its defectively manufactured infant formula products. Plaintiffs and class members suffered economic harm in that they would not have purchased the contaminated infant formula products if they had known the risks associated with its use.

## Third Cause of Action
**BREACH OF EXPRESS WARRANTY**

59. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein, and further declare:

60. Defendants expressly warrant that their infant formula products are safe for use. Joe Manning, the executive vice president, nutritional products, for Abbott Labs stated that "[w]e know parents depend on us to provide them with the highest quality nutrition formulas…" Abbott Labs advertises its infant formula products with a promise "to give babies a strong start by helping to keep them fed, happy, and healthy."

61. Defendants breached these warranties in violations of applicable law, by manufacturing, promoting, marketing, advertising, distributing and/or selling contaminated powdered infant formula products not fit for its intended use which resulted in damages to Plaintiffs and other members of the Class.

62. Plaintiffs and Class members purchased said Similac Infant Formula products unaware that they contained contaminants including potentially lethal bacteria.

63. But for Defendant's breach of warranty, Plaintiffs and the Class would not have purchased Defendant's tainted infant formula products.

64. Plaintiffs further assert claims under all other applicable state laws governing express warranties.

65. As a proximate result of this breach of warranty by Defendants, Plaintiffs and Class members have suffered economic damages in an amount to be determined at trial.

66. Plaintiffs and class members were harmed directly and proximately by Defendant's breach of express warranty. Plaintiffs and Class members suffered economic harm in that they would not have purchased Defendant's infant formula products if they had known about the potential

bacterial contamination and the possibility of death of infant children who consume said products.

## Fourth Cause of Action
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

67. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein, and further declare:

68. Defendant warranted that its powdered infant formula products were safe for consumption and reasonably fit for that intended use.

69. Defendant knew that Plaintiffs and Class Members depend on them to provide infants with the highest quality nutrition formulas.

70. Since the powdered infant formula products manufactured at Abbott Labs' Sturgis facility are potentially contaminated with possibly lethal bacteria, these products are not fit for their intended use. The FDA and Abbot Labs recommended that the affected product be discarded.

71. Plaintiffs and Class members purchased Defendant's infant formula products unaware that they were manufactured in a contaminated facility, possibly contained dangerous bacteria, and thus were potentially lethal to infants.

72. But for Defendant's breach of warranty, Plaintiffs and the Class would not have purchased Defendant's potentially contaminated infant formula products.

73. As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and the Class suffered injury in fact and actual damages.

74. As a proximate result of this breach of warranty by Defendants, Plaintiffs and Class members have suffered economic damages in an amount to be determined at trial.

75. Plaintiffs and class members were economically harmed directly and proximately by Defendant's breach of warranty in that they would not have purchased Defendant's infant

formula products had they known them to be manufactured at a contaminated facility and possibly contain bacteria lethal to infants.

### Sixth Cause of Action
#### NEGLIGENT MISREPRESENTATION

76. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein, and further declare:

77. Defendant made representations of material fact concerning the nutrition and safety of its powdered infant formula products.

78. Those representations with respect to infant formula products manufactured at Abbott Labs' Sturgis facility were in fact false. The truth is that Sturgis facility was found to be contaminated with *Cronobacter sakazakii*. Upon information and belief Defendant was aware of contamination at the Sturgis facility, but continued to market and sell its products to Plaintiffs and Class Members as safe for consumption by infants.

79. Defendant was negligent in representing the safety of the infant formula products manufactured at its Sturgis facility.

80. Plaintiffs and Class Members did not know that Defendant's representations about the safety of its infant formula products were false and believed them to be true. Plaintiff and the Class members reasonably relied upon the misrepresentations made by Defendant to Plaintiffs and the Class.

81. In justifiable reliance upon Defendant's negligent misrepresentations, Plaintiffs and the Class were induced to purchase the potentially tainted infant formula products that the FDA recommends be discarded.

82. Plaintiff and the Class suffered economic harm in that they have purchased unsafe infant formula products in reliance upon the misrepresentations of the safety and nutrition of said products by Defendant.

### Seventh Cause of Action
**UNJUST ENRICHMENT**

83. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein, and further declare:

84. As a result of Defendant's deceptive conduct in concealing potentially contaminated infant formula products from consumers, Defendant was enriched at the expense of Plaintiffs and Class members. Defendant failed to keep its Sturgis facility safe for manufacturing infant formula. Defendant failed to adequately test its facility and products for potentially lethal bacteria.

85. Defendant benefited from their deceptive acts by foregoing the costs of proper testing of its Sturgis facility and by receiving significant revenue from the sales of powdered infant formula products manufactured at said facility even after discovering *Cronobacter sakazakii*.

86. Defendant received significant revenue from the sale of potentially contaminated products to consumers despite knowledge of contamination of the facility at which those products were manufactured. The FDA has since advised that all of Defendant's infant formula products manufactured at the contaminated facility be discarded and not used. Defendant derived excessive revenue from the sale of unsafe infant formula products at the expense of Plaintiffs and other members of the Class.

87. It would be inequitable to permit Defendants to retain the benefit of their deceptive practices.

88. It would be an offense to equity for Defendant to retain the benefit of the sale of unsafe products without restitution to Plaintiff and the Class for monies paid to Defendant for the sale of the

defective products, including but not limited to Similac, Alimentum and EleCare powdered infant formula products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs individually and on behalf of the Class, prays for judgment as follows:

(i) Certifying that this action to be a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(ii) Finding Plaintiffs adequately representative of the Class;

(iii) Awarding Plaintiffs and the proposed Class members damages, and punitive damages in the amount to be determined at trial;

(iv) Awarding restitution and disgorgement of Defendant's revenues from the products to Plaintiffs and the proposed Class members;

(v) Awarding attorneys' fees and costs to Plaintiff;

(vi) Awarding declaratory relief and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

(vii) Awarding all such other and further relief as this Court deems appropriate.

## DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: February 25, 2022

Respectfully submitted,

*/s/Dennis D. Spurling*

DENNIS D. SPURLING (IRNo.: 6315997)
DENNIS SPURLING PLLC
3003 South Loop West, Suite 400
Houston, Texas 77054
Tel. (713) 229-0770
Fax. (713) 229-8444

Attorneys for Plaintiffs